UNITED STATES DISTRICT COURT                              O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| OSCAR SANTIAGO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-83 |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

## **ORDER**

Pending before the Court is the self-styled "Motion to Remand"[1] filed by Plaintiff Oscar Santiago ("Santiago"). Defendant State Farm Lloyds ("State Farm") has filed a response in opposition ("Response").[2] After considering the motion, response, record, and relevant authorities, the Court **DENIES** the motion to remand.

### I. BACKGROUND

On December 23, 2012, Santiago filed suit in state court, asserting that State Farm had violated the terms of a property insurance policy with regard to a hailstorm claim.[3] State Farm was served with citation on January 23, 2013, and filed its answer in state court on January 30, 2013.[4] State Farm thereafter removed the case to this Court on February 22, 2013, asserting subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1446.[5]

On March 25, 2013, Santiago filed the instant motion to remand, asserting that the requirements of diversity jurisdiction were not satisfied due to an insufficient amount in

---

[1] Dkt. No. 9 ("Motion to Remand").
[2] Dkt. No. 12 ("Response").
[3] Dkt. No. 1, Attach. 3 ("Petition").
[4] Dkt. No. 1, Attach. 4.
[5] Dkt. No. 1 ("Notice of Removal").

controversy. In response, State Farm expounded upon its removal position, specifically that the amount in controversy exceeds the jurisdictional threshold.

## II. DISCUSSION

Section 1332 of Title 28 of the United States Code provides that the Court has original jurisdiction of an action where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states . . . ."[6] Neither party disputes that the diversity-of-citizenship requirement is met. Instead, Plaintiff solely challenges the sufficiency of the amount in controversy.

Consistent with the sensitivity to the federalism concerns raised by removal,[7] the Court strictly construes the removal statute and "any doubt as to the propriety of removal should be resolved in favor of remand."[8] Recent revisions to 28 U.S.C. § 1446 now provide the primary framework for the Court's analysis, which was previously guided by case law. Nevertheless, the statutory provisions are largely consistent with pre-revision precedent, and the Court therefore looks to that precedent where the statute is silent.

### A. Plaintiff's Statement of Damages

In his original petition, Santiago does not include a specific damages amount and instead states that "[p]laintiff seeks damages, inclusive of attorney fees, in an amount not exceeding $75,000."[9] In his motion to remand, Santiago heavily relies upon this representation.[10] Under § 1446(c)(2), where removal is sought on the basis of diversity under §1332, "the sum demanded

---

[6] 28 U.S.C. 1332(a)(1); In re 1994 Exxon Chemical Fire, 558 F.3d 378, 387 (5th Cir. 2009).
[7] Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995) (citing Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 809 (1986)).
[8] Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008) (quoting In re Hot-Hed, Inc., 477 F.3d 320, 323 (5th Cir. 2007) (internal quotations omitted).
[9] Petition at ¶ 23.
[10] See Motion to Remand at II(A).

in good faith in the initial pleading shall be deemed to be the amount in controversy . . . ."[11] The good-faith requirement for a controlling amount in controversy is consistent with Fifth Circuit precedent in *De Aguilar v. Boeing Co.* ("*De Aguilar II*"), which noted that "the [amount-in-controversy] inquiry, however, does not end merely because the plaintiff alleges damages below the threshold. The face of the plaintiff's pleading will not control if made in bad faith." [12] In addition to the good-faith requirement, the statute also provides that the demand in the pleading will not control if "the State practice . . . does not permit demand for a specific sum . . . ."[13] Notably, while § 1446 speaks to the violation of a specific-damages prohibition as an exception, but is largely silent about the determination of bad faith,[14] the *De Aguilar II* Court recognized the former as evidencing the latter, writing:

> These new [state-law] rules [prohibiting plaintiffs "from pleading for specific amounts in cases of unliquidated damages"] have created the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading. Such manipulation is surely characterized as bad faith.[15]

As recognized by the *De Aguilar II* Court, and asserted by State Farm in its response, Santiago's allegations violated Texas law, which prohibited plaintiffs from alleging a specific dollar amount of damages at the time the petition was filed.[16] These considerations inform the Court's opinion

---

[11] 28 U.S.C. § 1446(c)(2).

[12] 47 F.3d 1404, 1408 (5th Cir. 1995).

[13] 28 U.S.C. § 1446(c)(2)(A)(ii).

[14] The Court recognizes that the statute describes one scenario where an act is deemed bad faith, but the statute neither describes that scenario as exclusive, nor provides any other rubric for bad-faith determination. *See* 28 U.S.C. §1446(c)(3)(B) (providing that "[i]f the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).").

[15] *De Aguilar II*, 47 F.3d at 1410.

[16] *See* Tex. R. Civ. P. 47(b) ("An original pleading which sets forth a claim for relief . . . shall contain . . . in all claims for unliquidated damages only the statement that the damages sought are within the jurisdictional limits of the court . . . ."). *See also De Aguilar II*, 47 F.3d at 1412 (quoting Rule 47(b) and describing violation through plaintiffs' allegation of specific damages). Although Rule 47(b) has since been revised to allow greater specificity of damages pleading, the revisions were only effective on March 1, 2013, well after the date that the petition was filed in this case.

that, instead of pleading a legitimate estimation of damages in this case, "[a]s a functional matter, plaintiff[] [is] attempting to avoid federal jurisdiction."[17] As a result, the allegations fall within the statutory exception and precedential definition of "bad faith," and the Court finds that the amount demanded in the complaint does not control the analysis.

### B.  Defendant's Showing of Damages

In the event that the initial pleading does not control, § 1446(c)(2)(B) provides that removal is proper where a sufficient amount in controversy is supported by a preponderance of the evidence.[18] The statute, however, does not define the preponderance-of-the-evidence standard in this specific context and, again, the Court turns to pre-codification precedent. Describing the preponderance-of-the-evidence showing for the amount in controversy, the Fifth Circuit in *St. Paul Reinsurance Co., Ltd. v. Greenberg* wrote that "[t]he test is whether it is more likely than not that the amount of the claim will exceed [the jurisdictional threshold]."[19] Accordingly, the Court begins its analysis by considering whether Defendant's evidence supports a finding that the amount in controversy will "more likely than not" exceed the jurisdictional threshold.

As support for removal, Defendant provides the following evidence: (1) policy limits; (2) discovery documentation attached to the petition; and (3) Plaintiff's refusal to stipulate to an amount in controversy below the jurisdictional threshold.

<u>Evidentiary Scope.</u> Santiago challenges the propriety of the Court's considering evidence of his refusal to stipulate that the amount in controversy is less than $75,000.[20] Therefore, as an

---

[17] *De Aguilar II*, 47 F.3d at 1408.
[18]  28 U.S.C. § 1446(c)(2)(B) (providing that "removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).").
[19] 134 F.3d 1250, 1254, n.13 (5th Cir. 1998) (considering removal under $50,000 jurisdictional threshold) (citing Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995)).
[20] *See* Motion to Remand at II(D).

initial matter, the Court addresses the scope of "summary judgment-type" evidence which may be considered in the analysis.[21] First, it is unclear whether Santiago's refusal to stipulate is accurately characterized as a post-removal document; Santiago failed to respond to State Farm's initial, pre-removal inquiry, and his later, affirmative refusal to stipulate was in response to State Farm's reiteration of that pre-removal inquiry.[22]

Moreover, because Santiago's refusal bears on the value of the claim at the time of removal, it qualifies as valid evidence even if characterized as a post-removal submission. Citing to *St. Paul Mercury Indemnity Co. v. Red Cab Co.*,[23] Santiago argues that "[w]hen determining the amount in controversy, the Court may only look at the record at the time of removal, and nothing after the removal."[24] While this principle is generally true, it is not applicable where, as here, the plaintiff has ambiguously alleged the amount of damages. The Fifth Circuit explained that "under those circumstances, the court is still examining the jurisdictional facts as of the time the case is removed, but the court is considering information submitted after removal."[25] Specifically, when "state court pleadings left jurisdiction ambiguous, a post-removal affidavit violates no principle of [*St. Paul Mercury*]."[26] Therefore, the Court will consider this evidence, submitted by State Farm after removal, in order to determine the amount in controversy as it existed at the time of removal.

---

[21] *Allen*, 63 F.3d at 1336 (5th Cir. 1995).

[22] *See* Response, Exh. A. In his declaration, Mark Lindow, counsel for State Farm, explains, and provides supporting documentation of, his two separate requests, on January 30, 2013, and March 25, 2013, for a stipulation that the amount in controversy was not greater than $74,999. However, Mr. Lindow further shows that Orlando Lopez, counsel for Santiago, only responded to the second request and declined to enter into the stipulation.

[23] 303 U.S. 283 (1938).

[24] Motion to Remand at II(B) (citing *St. Paul Mercury*, 303 U.S. at 292).

[25] Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia, 988 F.2d 559, 566 (5th Cir. 1993), *abrogated on other grounds by* Marathon Oil Co. V. Ruhrgas, 145 F.3d 211 (5th Cir. 1998).

[26] H & D Tire & Automotive–Hardware, Inc. v. Pitney Bowes, Inc., 250 F.3d 302, 304-05 (5th Cir. 2001).

Policy Limits. In determining the amount in controversy relative to coverage under an insurance policy, the Fifth Circuit in *Harford Ins. Group v. Lou-Con, Inc.*,[27] defined the "object of the litigation" as the "value of the right to be protected."[28] State Farm first directs the Court's attention to the policy limits of the policy under which Santiago is bringing this action. Those limits comprise $153,062.00 in dwelling coverage and $114,796.00 for contents coverage, a combined total of $267,858.00.[29] As a result, the insurance policy implicates an amount in controversy well-above the jurisdictional threshold, and this policy forms the contractual basis for Santiago's breach of contract claim.

The *Hartford* Court went on, however, to specify that the amount in controversy is more accurately reflected by the value of the claim.[30] On this basis, Santiago argues that his single, breach-of-contract claim indicates a lower amount in controversy.[31] This argument fails for two reasons. First, absent any limitation by Santiago, his breach-of-contract claim facially implicates the limits of the policy which forms the basis of the claim. Second, this nominal assertion of a breach-of-contract claim is belied by two aspects of his original petition: (1) his selection of a discovery control plan which indicates both a larger amount in controversy and a complexity beyond a mere contract dispute, consistent with Santiago's representation that "[t]his case involves complex issues and will involve extensive discovery;"[32] and (2) his discovery requests,

---

[27] 293 F.3d 908 (5th Cir. 2002) (declaratory action).

[28] *Hartford*, 293 F.3d at 911.

[29] Dkt. No. 12, Attach. 4. The Court notes that the original petition requires the Court to aggregate the policy limits for both dwelling and contents coverage. Paragraph 11 of the original petition provides: "Plaintiff asked that Defendant cover the cost of repairs to the Property pursuant to the Policy *and any other available coverages under the Policy.*" [emphasis added].

[30]  *Hartford*, 293 F.3d at 911(holding that, where the claim involves the applicability of the insurance policy to a particular occurrence, "the jurisdictional amount in controversy is measured by the value of the underlying claim.").

[31] *See* Motion to Remand at II(C).

[32] *See* Petition at A. "Level 3"-discovery under Texas Rule of Civil Procedure 190.4, the level selected by Santiago, is designed for complex cases involving greater damages and discovery than could be easily accommodated by the lower-level discovery control plans. In contrast, "Level 1"-discovery under Rule 190.2 is designed for cases involving monetary relief of $50,000 or less, and presumptively lower amounts of oral depositions.

incorporated into his original petition, for extra-contractual information about State Farm's operational policies since 2007.[33] As a result, while the breach-of-contract claim alone implicates an amount above the jurisdictional threshold, Santiago's pleading further implicates additional, extra-contractual claims.

Santiago also attempts to establish a lower amount in controversy by citing to the Defendant's estimate of damages.[34] In the first instance, the estimate is based on an inspection conducted on May 8, 2012, almost eight months prior to the filing of the original petition;[35] such a lengthy removal in time diminishes its evidentiary value regarding the amount in controversy "at the time of removal."[36] Santiago reinforces the Court's concern about the estimate's accuracy, expressly alleging in his original petition that "Defendant's adjuster and Defendant failed to properly adjust the claims and Defendant has denied at least a portion of the claims without an adequate investigation."[37] Santiago's disagreement with the estimate further reveals that his argument misapprehends the concept of "amount in controversy." While jurisprudence has refined and qualified its application in different contexts, the idea fundamentally embodies the amount about which the parties disagree, i.e. the "object *of the litigation*" or the "value of the right *to be protected*."[38] At most, the Defendant's estimate only sets the lower limit of any potential amount in controversy because, presumably, no controversy would exist if Plaintiff agreed with the Defendant's estimate. Therefore, the amount in controversy is book-ended by the

---

[33] *See* Petition at I(5) ("Your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of windstorm and hail claims in Texas from February 10, 2007 to present . . . .") & (6) ("Your written procedures or policies (including document(s) maintained in electronic form) in place from February 10, 2007 to present that pertain to the handling of complaints made by policyholders in Texas . . . .").

[34] Motion to Remand, Exhibit B.

[35] *Id*.

[36] *See* Lee v. Empire Ins., *et al*, 2009 WL 2160437 (E.D. La. 2009) (disregarding estimate as not reflective of the amount in controversy "at the time of removal" since it was made nine months after the original complaint was filed).

[37] Petition at ¶ 14.

[38] *Hartford*, 293 F.3d at 911 (emphasis added).

Defendant's estimate of $5,291.02 and the policy limits of $267,858.00, a range of fully $262,566.98.

At this point, the Court emphasizes the glaring absence of any damages-estimate by Santiago. In determining where the amount in controversy falls within the above range, the Court notes that neither party has submitted a demand letter or an estimate by Santiago. Combined with Santiago's vague, jurisdictionally-sensitive pleading of damages in his state-court petition, this apparent avoidance of any affirmative statement of damages reeks of the "abusive manipulation" rejected by the *De Aguilar II* Court, a hide-the-ball chicanery that is the type of "tactical manipulation" which the Fifth Circuit previously cautioned "cannot . . . be condoned."[39]

At the time of removal, Santiago's sole, affirmative indication of the amount in controversy was his refusal to stipulate to an amount in controversy below the jurisdictional threshold;[40] this affirmative rejection stands in contrast to the inadvertent omissions of other remand-seeking plaintiffs who have appeared before the Court.  Under Fifth Circuit precedent, such a stipulation would establish with legal certainty that the amount in controversy is jurisdictionally insufficient.[41]  Numerous other district courts have considered a refusal to stipulate as a factor in determining the amount in controversy, even when presented with significantly more amount-in-controversy indicia directly from the plaintiff.[42] Within the vacuum of Santiago's relative silence, his refusal carries even greater resonance, and the Court finds it indicative that the amount in controversy likely exceeds the jurisdictional threshold.

---

[39] Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir. 1985).

[40] *See* fn. 22, *supra*.

[41] *De Aguilar II*, 47 F.3d at 1412.

[42] *See, e.g.*, Johnson v. Dillard Dept. Stores, Inc., 836 F. Supp. 390, 394 (N.D. Tex. 1993) (treating refusal to stipulate to damages below threshold as a factor in favor of denying remand, but insufficient by itself); Cox v. Liberty Mut. and Credit Collection Services, Civ. No. 3:10-CV-1956-M, 2011 WL 98374, at *2 (N.D. Tex. Jan. 12, 2011) (considering refusal to stipulate insufficient basis to remand when combined with specific and undisputed economic damages of $348).

In light of the ambiguous pleading, the policy limits of $267,858.00, the claim directly asserted in the petition and those implied by both the state-court discovery level and the attached discovery requests, as well as Santiago's two-time refusal to stipulate that the amount in controversy is below the jurisdictional threshold, the Court finds that State Farm has shown it is more likely than not that the amount in controversy is in excess of $75,000.

### III.   CONCLUSION

For the foregoing reasons, the Court finds that State Farm has established a jurisdictionally-sufficient amount in controversy by a preponderance of the evidence. The statutory requirements for the Court's subject matter jurisdiction are satisfied and, accordingly, Santiago's motion to remand is **DENIED**.

IT IS SO ORDERED.

DONE this 3rd day of May, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE